**UNITED STATES of America,**
**Plaintiff,**

v.

**COLUMBIA PICTURES CORPORATION,**
Screen Gems, Incorporated, and Universal Pictures Company, Incorporated,
Defendants.

United States District Court
S. D. New York.
April 26, 1960.

---

See also 169 F.Supp. 888.

John Sirignano, Jr., Edward J. Harrison, and John M. O'Donnell, Attys., Dept. of Justice, Washington, D. C., for plaintiff.

Schwartz & Frohlich, Arthur H. Schwartz, Stuart G. Schwartz, Davis, Polk, Wardwell, Sunderland & Kiendl, Theodore Kiendl, Taggart Whipple, Henry L. King, Richard H. Pershan and Roland W. Donnem, New York City, for defendants Columbia Pictures Corp. and Screen Gems Inc.

Daniel Glass, New York City, Gen. Counsel for Screen Gems Inc.

Adolph Schimel, Harold Lasser, New York City, for Universal Pictures Co., Inc.

HERLANDS, District Judge.

The plaintiff has moved to strike from the record the following eleven exhibits of the defendants Columbia Pictures Corporation and Screen Gems: D–9, D–10, D–12, D–18, D–19, D–20, D–21, D–44, D–45 and part of D–46. The ground of the motion is the incompetency of the exhibits. The specifications of the motion and the opposition to it have been elaborated by argument at various times during the trial and also in detailed briefs submitted by counsel. The chal-lenged exhibits consist of the results of statistical studies prepared by McKinsey & Company and introduced into evidence by the defendants through the testimony of Dr. John J. Corson, an economist and director of McKinsey & Company on March 21 and 22, 1960.

Dr. Corson's trial testimony is detailed and voluminous. He was subject to close examination by both sides. Every nuance and inference of his testimony have been explored by counsel. Similarly, the plaintiff having called Professor Herbert Arkin, an expert statistician, the trial record contains comprehensive testimony severely critical of the defendants' exhibits in question, challenging the techniques and methodology employed by Dr. Corson.

Not only are the experts in diametrical disagreement as to their respective evaluation and critique of the particular exhibits and the methods by which they were prepared, but counsel disagree as to the extent to which Prof. Arkin's testimony adversely affects defendants' contentions in respect to particular exhibits.

The core of the controversy is the proper use of sampling methods. See e. g., United States v. United Shoe Machinery Corp., D.C.D.Mass.1950, 93 F.Supp. 190, 191; Id., D.C.D.Mass.1950, 110 F.Supp. 295, 298–299, 305–306, affirmed 1954, 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910.

A voluminous literature has grown up around the subject of sampling methods and techniques, and the statistical theories underlying sampling in the context of the judicial process. See E. G. Barksdale, "The Use of Survey Research Findings as Legal Evidence" (1957), esp. the forward, xiv, xxi–xxvi; text, 9–10, 14, 18, 24–26, 109–123, 147–154; Dession, "The Trial of Economic and Technological Issues of Fact," 58 Yale Law Journal, 1019–1049, 1242–1271 (1949), esp. 1019, 1020, 1242, 1243–1248, 1266; Kecker, "Admissibility in Courts of Law of Economic Data Based on Samples," 28 Jour-

nal of Business 114 (April 1955); Deming, "On the Presentation of the Results of Sample Surveys as Legal Evidence," 49 Journal of the American Statistical Association 814 (December 1954); Kennedy, "Some Legal Aspects of Sampling," 7 Industrial Quality Control, No. 5, page 12 (March 1951); Early, "The Use of Survey Evidence in Antitrust Proceedings," 33 Washington Law Review and State Bar Journal 380 (1958).

The Report of the Special Committee of the Section of Antitrust Law, American Bar Association, "Streamlining The Big Case," (1958) 32–33, states:

"* * * samples involve the selection for examination of a part of the total units or elements about which information is needed, physical examination thereof to obtain the required information and projections of the results of the universe. * * * In order to project this report, however, the burden of proof rests upon the offeror to show that the sample was selected in accordance with accepted principles of sampling so that it properly represents the universe. Once this is established, the testimony of the statistical expert projecting the findings on the sample to the universe raises only questions of relevancy, materiality and weight. While such testimony should be excluded unless the judge is satisfied the sampling technique used was reasonable, fair and adequate, he might, in a non-jury case, nevertheless admit the report on the sample itself, if relevant, even if some doubt exists as to whether the projection is valid."

The Report of the American Bar Association Committee on Practice and Procedure in the Trial of Antitrust Cases, Section of Antitrust Law, (1954), states that the use of the technique of sampling "will contribute to facilitate proof of business and economic facts" in antitrust cases and that this is an "important

short-cut." (pp. 40, 46); that the limit of error in utilizing a scientific method of sampling "should, of course, be taken into consideration by the Court in using these sample figures." (p. 47); that it is necessary to determine whether proper methods of selecting the sample and of projecting the results thereof have been used (p. 48); that the ultimate inquiry is whether the methods employed afford a reasonably fair guaranty of trustworthiness (pp. 49–50); and that the doctrinal trend seems to be to admit the evidence if there has been prima facie minimal proof of foundation facts and then to give such weight to the evidence as seems proper under the circumstances, especially in a non-jury trial (p. 50).

The latter generalization is in accord with the judicial trend observable in all fields of federal litigation—that the court should favor the admissibility of evidence.

The Federal Rules of Civil Procedure, Rule 43(a), 28 U.S.C.A., declares:

"In any case, the statute or rule which favors the reception of the evidence governs."

Chief Judge Clark summed up the policy in this circuit when he said in United States v. Apuzzo, 2 Cir., 1957, 245 F.2d 416, 420–421:

"It is now commonplace that the rules of evidence have tended ever more freely in the direction of admission of all relevant testimony in the light of modern experience that the truth is more often found by full revelation than by concealment. Hence we have the modern principle, stated in the Model Code of Evidence, and now embodied in Uniform Rules of Evidence, Rule 7: 'General Abolition of * * * Exclusionary Rules. Except as otherwise provided in these Rules * * * (f) all relevant evidence is admissible.' And we have often admonished our trial judges to err, if at all, on the

**500**

side of the admission, rather than the exclusion, of evidence."

In United States v. General Electric Co., D.C.D.N.J.1949, 82 F.Supp. 753, 903, the Court said:

"Exaggerated and over refined niceties in the rules of evidence must give way to the broad terms of Rule 43(a), Federal Rules of Civil Procedure, if full effect to the antitrust laws is to be given."

In the Dession article cited above, it is said:

"Novel questions inevitably arise with respect to the admissibility of such evidence and the possibility of relaxing certain foundation requirements normally adhered to in proceedings where proof is simpler and more manageable." (p. 1020.) "The sui generis character of economic proof in antitrust conspiracy proceedings and a consequent tendency to relax many ordinary evidential requirements have been explicitly recognized by the courts." (p. 1042.)

The application of the discipline of statistics to various trial issues has recently been cited as posing a problem to the judicial process not to be resolved by relying exclusively on case-to-case adjudication, but requiring research by a law-revision agency. Botein, "The Future of The Judicial Process: Challenge and Response," The Record, vol. 15, no. 4, 167, 169, 170 (April 1960).

Meanwhile, the responsibility of the court is to decide the motion at bar.

The court concludes that the defendants have established prima facie, through Dr. Corson, the foundation facts necessary to support the admissibility of the exhibits. At this time the court neither expresses nor intimates any opinion with respect to the probative value of the exhibits. See Barksdale, supra, at 152–153.

Plaintiff's motion to strike out the exhibits is denied.